UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____
                                       :
DAVID AMODIO,                          :
                                       :
          Petitioner,                  :     Civ. No. 13-4355 (NLH)
                                       :
     v.                                :     OPINION
                                       :
CHARLES E. WARREN, JR.,                :
                                       :
          Respondent.                  :
_____:

APPEARANCES:
David Amodio, #242285-B
New Jersey State Prison
P.O. BOX 861
Trenton, NJ 08625
     Petitioner, Pro se

Nancy P. Scharff, Esq.
Camden County Prosecutor's Office
Motions & Appeals Unit
25 North Fifth Street
Camden, NJ 08102-1231
     Counsel for Respondent

HILLMAN, District Judge

     This matter is before the Court pursuant to Petitioner

David Amodio's submission of a Petition (ECF No. 4) for writ of

habeas corpus, under 28 U.S.C. § 2254, challenging his state

court conviction for felony murder, manslaughter, arson, and

related offenses.  For the reasons set forth below, the Petition

will be denied.[1]

_____

[1]To the extent that Petitioner's claims are unexhausted, this
Court will deny them on the merits pursuant to 28 U.S.C. §

## I. FACTUAL BACKGROUND and PROCEDURAL HISTORY

A discussion of the factual and procedural background of this case is set forth in the state appellate court's decision on Petitioner's appeal of post-conviction relief:

> Defendant was charged with first-degree murder of Kollin Pimental (Kollin), N.J.S.A. 2C:11-3(a)(1) or (2) (count one); first-degree murder of Lisa Pimental (Lisa), N.J.S.A. 2C:11-3(a)(1) or (2) (count two); first-degree felony murder of Kollin, N.J.S.A. 2C:11-3(a)(3) (count three); first-degree felony murder of Lisa, N.J.S.A. 2C:11-3(a)(3) (count four); first-degree aggravated arson, N.J.S.A. 2C:17-1(a)(1) (count five); third-degree hindering his own apprehension or prosecution, N.J.S.A. 2C:29-3(b)(1) (count six); and fourth-degree contempt of a domestic violence restraining order, N.J.S.A. 2C:29-9(b) (count seven).

> The evidence presented at trial established that in September 2000, defendant moved into a home in Sicklerville, New Jersey with his girlfriend Lisa and Kollin, her son by a previous relationship. After a domestic dispute that occurred on October 11, 2000, Lisa obtained a temporary restraining order which

---

2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State"). See Carrascosa v. McGuire, 520 F.3d 249, 255 n. 10 (3d Cir. 2008) ("There is, however, a difference between granting an unexhausted habeas claim on the merits and denying such a claim on the merits, as recognized by the plain language of section 2254(b)(2) . . . . Denying an unexhausted claim on the merits is consistent with the statute"); Taylor v. Horn, 504 F.3d 416, 427 (3d Cir. 2007) ("Here, because we will deny all of Taylor's claims on the merits, we need not address exhaustion"); Bronshtein v. Horn, 404 F.3d 700, 728 (3d Cir. 2005) ("We would permit Bronshtein to attempt on remand to establish a reason to excuse his procedural default, but we find it unnecessary to do so because it is apparent that the claims in question lack merit. Under 28 U.S.C. § 2254(b)(2), we may reject claims on the merits even though they were not properly exhausted, and we take that approach here").

barred defendant from the home and having any contact with her.

Sometime after midnight on October 29, 2000, a neighbor reported a fire at the home, and observed defendant stumbling along the driveway. Defendant fell to the ground and said that his "wife" and the baby were in the house. According to a police officer who responded to the emergency call, defendant's clothes were on fire and he was "smoldering." Defendant was removed by ambulance and taken to a hospital. Later, the fire marshals found Lisa's and Kollin's burned bodies in the house. Parts of a broken hammer were found near Lisa's body.

The Camden County Medical Examiner performed autopsies on the victims' bodies. He testified that Lisa died from a depressed skull fracture that caused bleeding and bruising to the brain. The Medical Examiner also testified that Kollin died as a result of smoke inhalation and thermal burns, with no other contributing cause.

The Deputy Chief Fire Examiner for Camden County testified that he believed the fire was started with an accelerant and an open flame. He said that the fire began on the first floor of the house and traveled to the second floor. Tests revealed a residue of gasoline on the socks, jeans and sneakers that defendant was wearing at the time of the fire.

Defendant testified about the incident that led to the issuance of the temporary restraining order. Defendant said he was exercising and inadvertently caused Lisa to fall from the bed. He stated that, despite the restraining order, he met Lisa on October 19, 2000, in an effort to resolve their difficulties.

According to defendant, Lisa called him the next day to "work things out." He testified that, several days later, he accompanied Lisa to a store to purchase a washing machine and clothes dryer. Defendant installed the machines in the house. Defendant further testified that, the week before the fire, he performed work around the house.

Defendant also said that on the morning of October 28, 2000, he provided money to Lisa for her car payment,

and purchased new tires for Lisa's car. Defendant
helped Lisa and Kollin decorate the house for
Halloween. Later, defendant and Lisa ordered Chinese
food and watched television.

Defendant left the house sometime after midnight. He
testified he went to the shed in the rear of the house
to get some tools for repairs he was going to make at
his father's house. Defendant was returning to the
shed when he saw the fire. He denied doing anything to
hurt Lisa or Kollin.

The jury found defendant not guilty of the murder of
Kollin as charged in count one, but found him guilty
of the lesser-included offense of first-degree
aggravated manslaughter.  The jury found defendant not
guilty of the murder of Lisa, as charged in count two,
but found him guilty of second-degree
passion/provocation manslaughter.

The jury additionally found defendant guilty of first-
degree felony murder of Kollin, as charged in count
three; not guilty of felony murder of Lisa, as charged
in count four; not guilty of first-degree arson, as
charged in count five, but guilty of the lesser-
included offense of third-degree arson; guilty of
hindering his own apprehension or prosecution, as
charged in count six; and guilty of contempt, as
charged in count seven.

At sentencing, the trial court merged counts one and
five with count three, and sentenced defendant to life
imprisonment on count three, with a thirty-year period
of parole ineligibility.  The court imposed a
consecutive term of ten years on count two, with a
period of parole ineligibility as prescribed by the No
Early Release Act (NERA), N.J.S.A. 2C:43-7.2. The
court also imposed concurrent terms of four years on
count six and nine months on count seven.

State v. Amodio, No. A-4350-10T1, 2012 WL 5381769, at *1, 2

(N.J. Super. Ct. App. Div. Nov. 5, 2012).

Petitioner appealed his conviction.  The state appellate

court affirmed in part, reversed in part, and remanded for re-

4

sentencing on count two.[2] <u>State v. Amodio</u>, 390 N.J. Super. 313, 915 A.2d 569 (App. Div. 2007). The Supreme Court of New Jersey denied Petitioner's petition for certification. <u>State v. Amodio</u>, 192 N.J. 477, 932 A.2d 28 (2007).

Petitioner then filed his first petition for Post-Conviction Relief ("PCR"), which was denied on November 12, 2010. Petitioner appealed the PCR court's decision and, on November 5, 2012, the state appellate court affirmed the PCR court's denial of Petitioner's claims. <u>State v. Amodio</u>, No. A-4350-10T1, 2012 WL 5381769, at *6 (N.J. Super. Ct. App. Div. Nov. 5, 2012). The New Jersey Supreme Court denied his petition for certification. <u>State v. Amodio</u>, 213 N.J. 538, 65 A.3d 263 (2013).

Shortly thereafter, on or about July 18, 2013, Petitioner filed the instant petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. (ECF No. 1). On September 30, 2013, this case was administratively terminated due to Petitioner's failure to satisfy the filing fee requirement. (ECF No. 3). In the Court's September 30, 2013 Opinion, the Court noted that Petitioner had not filed a true petition for writ of habeas corpus, but had only filed a request for a stay. The Court denied Petitioner's

---

[2] The trial court re-sentenced Petitioner to a consecutive term of seven years of incarceration on count two with a NERA period of parole ineligibility. Petitioner did not appeal his re-sentencing.

request for a stay, and informed Petitioner that if he sought to reopen this matter, he would be required to submit a petition for writ of habeas corpus in order to invoke the jurisdiction of this Court. (ECF No. 2). To the extent he sought a stay, the Court informed Petitioner that he had to explain how a stay was appropriate under Rhines v. Weber, 544 U.S. 269, 125 S. Ct. 1528, 161 L. Ed. 2d 440 (2005).

On or about November 25, 2013, Petitioner filed an Amended Petition and paid the required filing fee. (ECF No. 4). The case was reopened for review by a judicial officer. (ECF No. 5). In addition to submitting an Amended Petition, Petitioner again requested a stay of these proceedings so that he could return to state court and exhaust the final claim in his Petition, designated as Ground Thirteen.

On February 11, 2016, the Court denied Petitioner's request for a stay. (ECF No. 7). The Court further ordered Petitioner to inform the court within 45 days as to whether he wished to withdraw his unexhausted claim and proceed on the exhausted claim or, in the alternative, to have the Petition dismissed without prejudice as unexhausted. (Id.). On or about March 9, 2016, Petitioner informed the Court that he wished to withdraw his unexhausted claim and proceed on the exhausted claims. (ECF No. 8).

On April 15 2016, the Court entered an Order to Answer the Petition. (ECF No. 9).  The Court also dismissed Ground Seven of the Petition with prejudice because that Ground alleged that the state court erred in the application of state law, which is a claim not cognizable on federal habeas review. (Id.).

In his Petition, Petitioner asserts twelve grounds for relief.  Specifically, he alleges:

(1)  The items seized after the Chief Fire Marshall found two bodies in the burned House should have been suppressed because the state did not obtain a search warrant, and no exigent circumstances were present;

(2)  The defendant['s] convictions are against the weight of the evidence and should be set aside because the jury failed to recognize evidence pointing to reasonable doubt;

(3)  A trial court must, under the new rule of law weigh the aggravating and mitigating factors unencumbered by the presumptive statutory term when sentencing the defendant;

(4)  Defendant was denied effective assistance of trial counsel because the court failed to properly charge the jury as to its duty to continue to deliberate and

failed to correct the jury's impression that they had
to reach a verdict;

(5) Under the pre-amendment statue, NERA does not apply to
a homicide which would otherwise be murder but for its
commission in the heat of passion;

(6) The trial court erred in imposing a consecutive term
where it determined the crimes [were] remote and
independent from on[e] another;

(7) Defendant['s] Post Conviction Relief Petition should
not be procedurally barred;[3]

(8) Defendant was denied the effective assistance of the
trial and/ or appellate counsel because they failed to
argue that the state's opening and closing arguments
were improper;

(9) Defendant received an illegal sentence as consecutive
sentences were imposed;

(10) The admission of the temporary restraining order
precluded the defendant from receiving a fair trial
where the trial court's limit[ing] instruction focused
the jury's attention on the defendant's propensity to
commit this murder;

---

[3] As discussed above, this claim has been dismissed.

(11) Defendant's conviction must be reversed because he was
     denied effective assistance of trial and appellate
     counsel, in the alternative, this matter must be
     remanded for an evidentiary hearing because a prima
     facie case of ineffectiveness was established. A.)
     Trial counsel opened the door to other crimes, wrong
     or acts evidence, and appellate counsel failed to
     raise this on direct appeal. B.) Appellate Counsel
     failed to raise jury intrusion by an extraneous
     influence; and

(12) Defendant[] was denied his right to the effective
     assistance of appellate counsel, Due Process of law
     and a right to a fair trial since the court declined
     to declare[] a mistrial due to a juror interference.


     Respondent filed his response to the Petition on July 15,
2016.  Petitioner did not file a Traverse.  This matter is now
fully briefed and the Court has considered all submissions by
the parties.

## II.  <u>STANDARDS OF REVIEW</u>

     As amended by the Antiterrorism and Effective Death Penalty
Act of 1996 ("AEDPA"), 28 U.S.C. § 2254 now provides, in
pertinent part:

> (a) The Supreme Court, a Justice thereof, a circuit
> judge, or a district court shall entertain an
> application for a writ of habeas corpus in behalf
> of a person in custody pursuant to the judgment
> of a State court only on the ground that he is in
> custody in violation of the Constitution or laws
> or treaties of the United States.

With respect to any claim adjudicated on the merits in state court proceedings, the writ shall not issue unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or
> involved an unreasonable application of, clearly
> established Federal law, as determined by the Supreme
> Court of the United States; or

> (2) resulted in a decision that was based on an
> unreasonable determination of the facts in light of
> the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court decision is "contrary to" Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or "if the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] Court and nevertheless arrives at a result different from [the Court's] precedent." Williams v. Taylor, 529 U.S. 362, 405-06, 120 S. Ct. 1495, 146 L.Ed.2d 389 (2000) (O'Connor, J., for the Court, Part II). A state court decision "involve[s] an unreasonable application" of federal law "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases

but unreasonably applies it to the facts of the particular state prisoner's case," and may involve an "unreasonable application" of federal law "if the state court either unreasonably extends a legal principle from [the Supreme Court's] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply," (although the Supreme Court expressly declined to decide the latter). Id. at 407-09.

To be an "unreasonable application" of clearly established federal law, the state court's application must be objectively unreasonable. See id. at 409. In determining whether the state court's application of Supreme Court precedent was objectively unreasonable, a habeas court may consider the decisions of inferior federal courts. See Matteo v. Superintendent, 171 F.3d 877, 890 (3d Cir. 1999).

The deference required by § 2254(d) applies without regard to whether the state court cites to Supreme Court or other federal case law, "as long as the reasoning of the state court does not contradict relevant Supreme Court precedent." Priester v. Vaughn, 382 F.3d 394, 398 (3d Cir. 2004) (citing Early v. Packer, 537 U.S. 3, 123 S. Ct. 362, 154 L.Ed.2d 263 (2002); Woodford v. Visciotti, 537 U.S. 19, 123 S. Ct. 357, 154 L.Ed.2d 279 (2002)).

Finally, a pro se pleading is held to less stringent
standards than more formal pleadings drafted by lawyers. See
Erickson v. Pardus, 551 U.S. 89, 94, 127 S. Ct. 2197, 2200, 167
L. Ed. 2d 1081 (2007) (citing Estelle v. Gamble, 429 U.S. 97,
106, 97 S. Ct. 285, 50 L.Ed.2d 251 (1976)); Haines v. Kerner,
404 U.S. 519, 520, 92 S. Ct. 594, 30 L.Ed.2d 652 (1972).  A pro
se habeas petition and any supporting submissions must be
construed liberally and with a measure of tolerance. See Royce
v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998); Lewis v. Attorney
General, 878 F.2d 714, 721-22 (3d Cir. 1989).

### III. DISCUSSION

Because several of Petitioner's claims address similar
subject matter and require similar analysis, this Court will
address the grounds for relief not in the order presented in the
Petition, but in an order which resolves each ground most
efficiently and clearly.

A. Ground One

In Ground One, Petitioner claims that items seized in the
burned residence after the investigating fire department
officials found the bodies should have been suppressed at trial
because the State did not obtain a search warrant and no exigent
circumstances existed to excuse the need for a warrant. (Pet. at
6, ECF No. 4).  In support of this claim, Petitioner states:
"The fire inspectors found the bodies they [sic] should of

suspended the investigation until a search warrant was obtained[.] Investigators unlawfully seized items of clothing and mixed them together causing cross contamination. They illegally searched defendant's shed and vehicle. They also seized defendant's cellphone." (Id.).

Petitioner is not entitled to federal habeas relief on this claim. The Supreme Court has held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." Stone v. Powell, 428 U.S. 465, 494 (1976); see also, Wright v. West, 505 U.S. 277, 293, 112 S.Ct. 2482, 120 L.Ed.2d 225 (1992); Marshall v. Hendricks, 307 F.3d 36 (3d Cir. 2002); Deputy v. Taylor, 19 F.3d 1485 (3d Cir. 1994). "A petitioner has had a full and fair opportunity to litigate such claims if the state has an available mechanism for suppressing evidence seized in or tainted by an illegal search or seizure, irrespective of whether the petitioner actually availed himself of that mechanism." Wright v. Pierce, No. CV 12-175-SLR, 2015 WL 1137987, at *7 (D. Del. Mar. 12, 2015) (citations omitted).

Here, Petitioner raised his Fourth Amendment argument at trial and on direct appeal of his conviction. See State v.

Amodio, 390 N.J. Super. 313, 323-29, 915 A.2d 569, 575-78 (App.
Div. 2007). Both State courts considered Petitioner's claim and
rejected it. Accordingly, because Petitioner had the
opportunity to fully and fairly litigate this claim, he is
barred from habeas relief on this issue and the claim will be
dismissed.

    B. <u>Ground Two</u>

    As his second ground for relief, Petitioner asserts that
his convictions were against the weight of the evidence and
should be set aside. In support of this claim, Petitioner
states: "The lack of evidence points to reasonable doubt. No
Gas container was found and no one saw who set the fire, or even
if the fire was set. No definitive explanation on what if
anything was used to start fire." (Pet. at 6, ECF No. 4).
Petitioner raised this claim in his direct appeal. The
Appellate Division did not discuss this argument, however, and
concluded that it was "not of sufficient merit to warrant
discussion in this opinion." <u>Amodio</u>, 390 N.J. Super. at 334, 915
A.2d at 581 (citing N.J. Ct. R. 2:11-3(e)(2)).

    A claim that the jury's verdict was against the weight of
the evidence raises a due process concern. Only where, "after
viewing the evidence in the light most favorable to the
prosecution, [no] rational trier of fact could have found the
essential elements of the crime beyond a reasonable doubt"

should the writ issue. <u>Jackson v. Virginia</u>, 443 U.S. 307, 319 (1979). This standard must be applied "with explicit reference to the elements of the criminal offense as defined by state law." <u>Jackson</u>, 443 U.S. at 324, n. 16. <u>See also</u> <u>Orban v. Vaughn</u>, 123 F.3d 727 (3d Cir.1997), <u>cert</u>. <u>denied</u>, 522 U.S. 1059 (1998). As noted above, state court factual determinations are presumed to be correct. <u>See</u> <u>Werts v. Vaughn</u>, 228 F.3d 178, 186 (3d Cir.2000).

Here, Petitioner focuses on the facts surrounding the arson in this case and argues that the evidence was insufficient to support his conviction.[4] To the contrary, however, sufficient

---

[4] Petitioner was convicted of third degree arson, which is defined under New Jersey law as follows:

b. Arson. A person is guilty of arson, a crime of the third degree, if he purposely starts a fire or causes an explosion, whether on his own property or another's:

(1) Thereby recklessly placing another person in danger of death or bodily injury; or

(2) Thereby recklessly placing a building or structure of another in danger of damage or destruction; or

(3) With the purpose of collecting insurance for the destruction or damage to such property; or

(4) With the purpose of destroying or damaging a structure in order to exempt the structure, completely or partially, from the provisions of any State, county or local zoning, planning or building law, regulation, ordinance or enactment ; or

evidence was presented at trial to support this conviction. The
State presented testimony from arson investigators, police
officers, and EMS personnel, as well as expert testimony
regarding the cause of the fire. In addition, Petitioner was
found at the scene suffering from burns. The evidence also
included DNA evidence linking Petitioner to both the homicides
and the arson. (See Respt.'s Ex. Rta16/16T108-12 to 109-13; ECF
No. 14-44). Petitioner therefore has not shown that no
reasonable trier of fact could have found him guilty beyond a
reasonable doubt. As such, the Appellate Division's rejection
of this claim was not contrary to federal law. Accordingly,
Petitioner is not entitled to habeas relief on this claim and
Ground Two will be dismissed.

   C. Sentencing Claims: Grounds Three, Five, Six, And Nine

     In Grounds Three, Five, Six, and Nine, Petitioner asserts
certain challenges to his sentence. Each of these claims, as
discussed further below, will be denied.

     Generally, sentencing is considered a matter of state
criminal procedure, which does not fall within the purview of
federal habeas review. Ervin v. Beyer, 716 F.Supp. 163, 165
(D.N.J. 1989); see also Johnson v. Beto, 383 F.2d 197, 198 (5th

---

        (5) Thereby recklessly placing a forest in danger of
        damage or destruction

N.J. Stat. Ann. § 2C:17-1.

Cir. 1967), cert. denied, 393 U.S. 868 (1968); U.S. ex rel.
Jackson v. Meyers, 374 F.2d 707, 711 n. 11 (3d Cir. 1967).
Indeed, absent some constitutional violation, federal courts
cannot review a state's alleged failure to adhere to its own
sentencing procedure. Rorie v. Beard, Civ No. 04-3380, 2005 WL
825917, *5 (E.D. Pa. April 7, 2005)(citing Branan v. Booth, 861
F.2d 1507, 1508 (11th Cir. 1988)). Thus, a federal court will
not reevaluate a sentence in a habeas proceeding unless it
exceeds the statutory limits. Jones v. Superintendent of Rahway
State Prison, 725 F.2d 40 (3d Cir. 1984); see also, Williams v.
Duckworth, 738 F.2d 828, 831 (7th Cir. 1984), cert. denied, 469
U.S. 1229 (1985) ("As a general rule, federal courts will not
review state sentencing determinations that fall within
statutory limits."); Bonner v. Henderson, 517 F.2d 135, 136 (5th
Cir. 1975) ("This Court will not upset the terms of a sentence
within statutory limits unless so disproportionate to the
offense as to be completely arbitrary and shocking").

Here, in Grounds Five, Six, and Nine, Petitioner has not
alleged that his sentence violates any federal constitutional
rights. Instead, his claims are premised on alleged errors of
state law. The Appellate Division found that those claims
lacked merit. Petitioner originally raised Ground Three as a
Sixth Amendment claim on direct appeal and, on that issue, the
Appellate Division granted Petitioner relief. In addition,

Petitioners' sentence does not exceed the statutory limits.
Consequently, these Grounds are not subject to federal habeas
review and will be denied.

1. Ground Three

In Ground Three, Petitioner asserts that "a trial court
must, under the new rule of law weigh the aggravating and
mitigating [sentencing] factors unencumbered by the presumptive
statutory term when sentencing the defendant." (Pet. at 6, ECF
No. 4). Petitioner raised this issue in his direct appeal. The
Appellate Division granted Petitioner relief by vacating
Petitioner's sentence on count two and remanding to the trial
court for re-sentencing pursuant to State v. Natale, 184 N.J.
458 (2005).

After Petitioner was re-sentenced, he did not appeal his
new sentence. If Petitioner intends to challenge the procedure
employed at his re-sentencing, which is not entirely clear from
the Petition, such a claim is unexhausted because Petitioner did
not pursue an appeal challenging the sentence in the state
courts. A petitioner seeking federal habeas review must exhaust
state court remedies for all grounds for relief asserted in a
habeas petition. 28 U.S.C. § 2254(b)(1)(A); Crews v. Horn, 360
F.3d 146, 151 (3d Cir. 2004). Petitioner therefore cannot be
granted habeas relief for this claim if it is addressed to his
re-sentencing.

However, the Court may dismiss Petitioner's unexhausted claim on the merits. 28 U.S.C. § 2254(b)(2). Exhausted or not, Petitioner's claim is premised on an alleged state court error in its application of state law and therefore does not provide a basis for habeas relief. The Supreme Court has emphasized that "federal habeas relief does not lie for errors of state law." Estelle v. McGuire, 502 U.S. 62, 67–68 (1991) (citation omitted). Here, in support of this claim, Petitioner states:

> The judge's one mitigating factor was actual [sic] two factors. 1.) Defendant had no prior history of delingunecy [sic]. 2.) defendant had no prior criminal history or activity which should of factored in the sentencing of the defendant and could of licensed [sic] the sentence of defendant.

Pet. at 7. Petitioner is thus challenging the trial court's application of New Jersey law -- specifically, that court's application of N.J. STAT. ANN. 2C:44-1b(7), which delineates the mitigating factor in question. This Court may not "reexamine state-court determinations on state-law questions." Estelle, 502 U.S. at 68. Thus, because this claim is both unexhausted and fails to raise a cognizable federal claim, Petitioner is not entitled to habeas relief. Ground Three will therefore be denied.

2. Ground Five

In Ground Five, Petitioner argues that New Jersey's No Early Release Act ("NERA") does not apply to a homicide which

would otherwise be murder but for its commission in the heat of passion. Petitioner raised this claim in his direct appeal. However, this claim is also premised on the state court's application of state law and the Appellate Division reviewed the claim only on state law grounds. See Amodio, 390 N.J. Super. at 333–34, 915 A.2d at 581. Because this claim fails to raise a federal issue, Petitioner is not entitled to habeas relief. Accordingly, Ground Five will be denied.

3. Grounds Six and Nine

In Grounds Six and Nine, Petitioner challenges the trial court's imposition of consecutive terms. Specifically, in Ground Six, Petitioner asserts that "[t]he trial court erred in imposing a consecutive term where it determined the crimes remote and independent from on [sic] another." Pet. at 7. In Ground Nine, Petitioner states, "Defendant received an illegal sentence as consecutive sentences were imposed." Id. Petitioner raised this issue, as reflected in Ground Six, in his direct appeal. Petitioner later raised the issue again, as reflected in Ground Nine, in his PCR petition. Though these Grounds raise the same issue, and neither will afford Petitioner habeas relief, the Court will address these Grounds separately as their presentation here raises distinct issues as to each asserted ground for relief.

a. Ground Six

The last court to consider the claim Petitioner raises in Ground Six was the Appellate Division on Petitioner's direct appeal. That court analyzed the claim as follows:

> Defendant next contends that the judge erred by imposing a consecutive sentence on count two. We disagree.
>
> The judge properly found that there were two crimes involving separate victims and the evidence established that the deaths of the victims occurred at different times. Furthermore, Lisa's murder and the setting of the fire that killed Kollin were separate acts of violence.
>
> In our view, the judge's findings reflect an appropriate consideration of the factors enumerated in State v. Yarbough, 100 N.J. 627, 630, 498 A.2d 1239 (1985), cert. denied, 475 U.S. 1014, 106 S.Ct. 1193, 89 L.Ed.2d 308 (1986). We therefore conclude that the judge did not abuse his discretion when he imposed a consecutive sentence on count two.

Amodio, 390 N.J. Super. at 333, 915 A.2d at 580-81. Here, Petitioner has not alleged a violation of any federal or constitutional right arising from the court's imposition of consecutive sentences. Moreover, the Appellate Division analyzed Petitioner's claim only pursuant to New Jersey sentencing law. That court determined that Petitioner's sentence was in accord with New Jersey mandates. This Court, however, cannot reexamine state court determinations of state law. Estelle, 502 U.S. at 68. Petitioner therefore is not entitled to federal habeas relief on this claim. Accordingly, Ground Six will be denied.

b. <u>Ground Nine</u>

In Ground Nine, Petitioner again challenges the state court's imposing consecutive sentences. Petitioner raised this issue before the state courts a second time in his PCR petition. (<u>See</u> Resp.'s Ex. Ra15 at 37-39, ECF No. 14-17). There, as he does here in Ground Nine, Petitioner asserted that "Defendant received an illegal sentence as consecutive sentences were imposed." <u>Id.</u> at 37. The Court finds that Ground Nine is procedurally defaulted.

A habeas petitioner exhausts his state court remedies by presenting his federal constitutional claims at each level of state court empowered to hear such claims, including direct appeal and post-conviction proceedings. 28 U.S.C. § 2254(c); <u>Holloway v. Horn</u>, 355 F.3d 707, 714 (3d Cir.2004) (citing <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 844-45 (1999)). A claim is not only unexhausted but is also procedurally defaulted if state procedures prohibit the petitioner from later presenting the unexhausted claim in state court. <u>Id.</u> (citing <u>Jimenez v. Walker</u>, 458 F.3d 130, 149 (2nd Cir.2006).

A federal court considering a petition for habeas relief may "not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment." <u>Coleman v. Thompson</u>, 501 U.S. 722, 729

(1991).  The prohibition applies whether the state law ground in question is substantive or procedural. Id.  Procedural default may be excused and a federal habeas court may address the claim if the petitioner shows cause for the default and prejudice caused by a violation of federal law. Martinez v. Ryan, 566 U.S. 1, 10 (2012).

"The existence of cause for procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." Murray v. Carrier, 477 U.S. 478, 488 (1986).  The prejudice required to excuse procedural default is more than the possibility of prejudice, but that the trial errors "worked to his actual and substantial disadvantage, infecting the entire trial with error of constitutional dimensions." Albrecht v. Horn, 485 F.3d 103, 124, n. 7 (3d Cir.2007)(quoting Murray, 477 U.S. at 494)).  In addition, procedural default may also be excused if a "fundamental miscarriage of justice" will occur if the habeas court does not address the merits of the claim. Coleman, 501 U.S. at 750.

When Petitioner brought this claim in his PCR court, the PCR court determined that the claim was procedurally defaulted

under state law pursuant to N.J. Court Rule 3:22-5[5] because the Appellate Division had already rejected the claim in Petitioner's direct appeal. (Respt.'s Ex. Rta25/25T20-24 to 22-5; ECF No. 14-53). Petitioner challenged the PCR court's finding of procedural default and the Appellate Division affirmed, finding Petitioner's argument did not merit discussion. State v. Amodio, No. A-4350-10T1, 2012 WL 5381769, at *6 (N.J. Super. Ct. App. Div. Nov. 5, 2012). Moreover, Petitioner has not demonstrated cause and prejudice because the issue this claim presents mirrors that contained in Ground Six, which was ruled upon by the Appellate Division and herein addressed by this Court. Thus, this habeas claim is procedurally defaulted because the state appellate court reviewing the PCR petition dismissed the claim on a state procedural ground.

D. Ground Ten

In Ground Ten, Petitioner argues that the admission of the temporary restraining order precluded him from receiving a fair

---

[5] The Rule provides, in relevant part:

> A prior adjudication upon the merits of any ground for relief is conclusive whether made in the proceedings resulting in the conviction or in any post-conviction proceeding brought pursuant to this rule or prior to the adoption thereof, or in any appeal taken from such proceedings.

N.J. Ct. R. 3:22-5.

trial because the trial court's "limited instruction focused the jury's attention on [Petitioner's] propensity to commit this murder." (Pet. at 8; ECF No. 4). Petitioner does not assert that the admission of the restraining order and the trial court's instruction violated a specific constitutional or federal right, but states that he was denied a fair trial as a result of these events. Construing the Petition liberally, the Court therefore construes this claim as raising a claim under the Due Process Clause.

Petitioner raised this matter in his direct appeal. The Appellate Division analyzed the claim as follows:

> We next consider defendant's contention that the trial judge erred in instructing the jury with regard to the temporary domestic violence restraining order.

> The record shows that the judge discussed the instructions with counsel at a charge conference. Defense counsel agreed to the proposed charge, but insisted that the restraining order be referred to as a temporary order. The trial judge instructed the jury as follows:

>> Now, ladies and gentlemen of the jury, during the course of this trial, you have heard testimony regarding a temporary restraining order obtained by Lisa Pimental against the defendant, David Amodio. Now, the existence of this temporary restraining order may not be used by you as a jury to infer that the defendant committed any acts of violence. The temporary restraining order is not proof of violent acts. It may, however, be considered to assess or determine the defendant's credibility as to the existence of motive to commit the crimes and may be considered as a basis for the contempt charge in Count Seven of the indictment in this case.

Defendant now argues that the judge erred by failing
to focus the jury's attention on the specific purpose
for which the temporary restraining order may be used.
We consider this contention under the plain error
standard. *R.* 2:10-2.

When a defendant is charged with contempt of a
domestic-violence restraining order, and other
offenses arising from the same incident, the charges
should be tried sequentially. State v. Chenique-Puey*,*
145 N.J. 334, 343, 678 A.2d 694 (1996). The underlying
offense should be tried first and, in that proceeding,
the restraining order is not admissible unless the
defendant testifies, in which case, the order is
admissible to impeach defendant's testimony. Ibid.
"Following a verdict on the underlying offense, the
trial court should immediately proceed to try the
contempt charge before the same jury." Ibid.

Here, the trial judge initially severed the contempt
charge from the other offenses charged in the
indictment. Defense counsel recognized that if
defendant testified, the restraining order could be
used for impeachment purposes. Defendant testified and
he was questioned about the order. Later, the parties
agreed to have the jury consider the contempt charge
with the other charges.

In our view, the judge's instruction to the jury on
the restraining order did not improperly focus the
jury on defendant's propensity or predisposition to
commit the underlying offense. Indeed, as we have
pointed out, the judge specifically informed the
jurors that the restraining order was not proof of any
violent acts. Moreover, the judge stated that the
order could not be used by the jurors to infer that
defendant committed any acts of violence. The judge
instructed the jury that the order could be considered
to assess defendant's credibility as to the existence
of any motive to commit the crimes.

. . . .

Defendant's motive was a material issue in dispute. He
testified that he did not kill Lisa and did not start
the fire that took Kollin's life. Clearly, the

credibility of these statements was at issue.
Furthermore, the temporary restraining order provided
evidence that defendant may have been motivated to
commit the crimes because Lisa had obtained the order,
which barred him from having any contact with her and
forced him to leave the house he had recently
purchased.

We therefore are convinced that the charge regarding
the restraining order properly instructed the jury on
the manner in which the order could be used by the
jury in its deliberations and fact-finding. The charge
was not erroneous, nor was it clearly capable of
leading to an unjust result. *R.* 2:10-2.

Amodio, 390 N.J. Super. at 329-31, 915 A.2d at 578-79.

Petitioner asserts that the trial court's admission of the

restraining order and instruction to the jury concerning it

denied him a fair trial. Thus, the Court will consider

Petitioner's claim as one under the Due Process Clause of the

Fourteenth Amendment.

"[T]he Due Process Clause guarantees the fundamental

elements of fairness in a criminal trial." Riggins v. Nevada,

504 U.S. 127, 149 (1992). In the field of criminal law, "the

category of infractions that violate 'fundamental fairness' [is

defined] very narrowly based on the recognition that, beyond the

specific guarantees enumerated in the Bill of Rights, the Due

Process Clause has limited operation." Medina v. California, 505

U.S. 437, 443 (1992). In order to satisfy due process,

Petitioner's trial must have been fair, but it need not have

been perfect. United States v. Hasting, 461 U.S. 499, 508-09

(1983) ("[T]here can be no such thing as an error-free, perfect trial, and [] the Constitution does not guarantee such a trial."). "Except in cases involving a violation of a specific constitutional provision such as the Confrontation Clause, this Court may not reverse a state trial judge's action in the admission of evidence unless the evidentiary ruling so infuses the trial with unfairness as to deny due process of law." Riggins, 504 U.S. at 147. As to Petitioner's claim regarding the trial court's jury instructions, such errors are harmless unless they "had substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. 619, 637 (1993).

The Court concludes that the state courts' resolution of these issues did not deny Petitioner of his right to due process of law. As the Appellate Division stated, Petitioner testified at trial and knew that were he to do so, the restraining order could be used for impeachment purposes. During Petitioner's testimony, he testified as to his version of the events leading to the imposition of the restraining order and denied committing the crimes for which he was tried. Because Petitioner's motive and credibility were at issue, the court's admission of the restraining order for those limited purposes was not fundamentally unfair. Similarly, Petitioner has not shown that the trial court's limiting instruction had a substantial and

injurious influence on the jury's decision. The trial court
specifically instructed the jury that the restraining order
could not be used to infer that Petitioner committed any acts of
violence and that consideration of the order was limited to
credibility regarding motive and the contempt charge, which was
based on violation of the order. The Appellate Division's
resolution of these state-law evidentiary questions therefore
does not give rise to a cognizable federal due process claim.
Moreover, that court's decision was not contrary to federal law.
Accordingly, Ground Ten will be denied.

E. Ineffective Assistance of Counsel Claims: Grounds Four,
   Eight, Eleven, and Twelve

   Petitioner's Grounds Four, Eight, Eleven, and Twelve are
based on his assertion that he was denied his Sixth Amendment
right to effective assistance of counsel.

   1. Standard of Review

   The Counsel Clause of the Sixth Amendment provides that a
criminal defendant "shall enjoy the right ... to have the
Assistance of Counsel for his defence." U.S. Const. amend. VI.
The right to counsel is "the right to effective assistance of
counsel." McMann v. Richardson, 397 U.S. 759, 771 n.14, 90 S.
Ct. 1441, 25 L.Ed.2d 763 (1970)(emphasis added)(citations

omitted), cited in Ross v. Varano, 712 F.3d 784, 797 (3d Cir. 2013).

To prevail on a claim of ineffective assistance of counsel, a habeas petitioner must show both that his counsel's performance fell below an objective standard of reasonable professional assistance and that there is a reasonable probability that, but for counsel's unprofessional errors, the outcome would have been different. Strickland v. Washington, 466 U.S. 668, 687, 694, 104 S. Ct. 2052, 80 L.Ed.2d 674 (1984). With respect to the "performance" prong, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689. With respect to the "prejudice" prong, a "reasonable probability" of prejudice is "a probability sufficient to undermine confidence in the outcome." Strickland at 694. Thus, counsel's errors must have been "so serious as to deprive the defendant of ... a trial whose result is reliable." Id. at 687. The performance and prejudice prongs of Strickland may be addressed in either order, and "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice ... that course should be followed." Id. at 697.

There is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689. As a general matter, strategic

choices made by counsel after a thorough investigation of the facts and law are "virtually unchallengeable," though strategic choices "made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." Id. at 690–91; see also Marshall v. Cathel, 428 F.3d 452, 462–63 (3d Cir. 2005). If counsel has been deficient in any way, however, the habeas court must determine whether the cumulative effect of counsel's errors prejudiced the defendant within the meaning of Strickland.

2. Ground Four

As his fourth ground for habeas relief, Petitioner asserts that he was denied effective assistance of trial counsel because the court failed to properly charge the jury as to its duty to continue to deliberate and failed to correct the jury's impression that they had to reach a verdict. (Pet. at 7, ECF No. 4). In support of this claim, Petitioner states:

> [O]n April 11, 2004, at approximately 1:15 p. m.,
> which was the fourth day of deliberations. The jury
> indicated it was deadlocked, [J]udge Brown received a
> note which stated it would be unfair to the defendant
> if we the jury continued to deliberate. The judge
> charged the jury and ordered them back to
> deliberations. But due to the late hour the court gave
> them the opinion [sic] for the next day. The jury
> agreed and the foreperson said 'tomorrow would be a
> better day" after that was said the court failed to
> charge the jury after that statement was made.

(Id.).

Petitioner raised this claim in his PCR proceedings. The Appellate Division concluded that this claim did not present sufficient merit to warrant discussion and summarily affirmed the PCR court's denial of the claim. State v. Amodio, No. A-4350-10T1, 2012 WL 5381769, at *6 (N.J. Super. Ct. App. Div. Nov. 5, 2012). Thus, the last state court to analyze this claim was the PCR Court, which discussed the claim as follows:

> Jury Instructions. Petitioner also claims that his counsel was ineffective for failing to request that this Court instruct the jury that they had no obligation to reach a unanimous verdict.
>
> Jury deliberations began on Wednesday, April 7, 2004, continued to the following day, and resumed for a third day on April 13, 2004.
>
> At approximately l:15 p.m., the jury informed this court that they were at an impasse on deliberations on five of the seven counts against petitioner. In response, this Court read the model jury charge for further jury deliberations. The jury then continued deliberations at 2:25, and at 5:52 p.m., this Court inquired whether to continue or to resume deliberations the following day.
>
> The foreperson indicated that "tomorrow would be a better day" and the jurors were dismissed for that day.
>
> On the fourth day of deliberations, the jury reached a verdict acquitting petitioner of the death eligible charges.
>
> The model charge allows for additional charging after a "reasonable time has gone by subsequent to the delivery of your charge." The model jury charge referred to New Jersey Statutes Annotated 2C:1-9(d), subsection 2, which approves termination of deliberations where "the trial Court finds that the termination is necessary because of the failure of the jury to agree upon a verdict after a reasonable time for deliberation has been allowed."

In the present case, this Court gave the model jury charge in the middle of the third day of deliberations and the jury delivered their verdict at the end of the fourth day of deliberations.

Now, although the statute does not give a specific time period, it was reasonable for the jury to -- the jurors to deliberate for another day after the model charge was read.

Further, the record does not indicate that the jurors were unable to reach a verdict after the model jury charge for the further (sic) deliberations was read. In fact, there were no more questions or concerns raised by any juror after the model charge was read.

Additionally, petitioner has not provided this Court with any evidence that defense counsel was required to request the Court to advise jurors that there is no obligation to reach a verdict. There is no model jury charge that covers such a request.

Similarly, petitioner has not provided any affidavits or certifications indicating that such a model charge would say or when during deliberations such a charge should be given. As a result, petitioner has failed to make a prima facie case of prejudice with regard to jury deliberations and, therefore, failed to make a prima facie case of substandard representation.

(Respt.'s Ex. Rta25/25T32-7 to 34-13; ECF No. 14-53). The PCR court further concluded, with respect to all of Petitioner's ineffective assistance claims, that Petitioner "failed to prove either gross error or prejudice" as required by Strickland. (Id. at 35-17 to 18). Specifically, the PCR court concluded that Petitioner's counsel "convinced the jury to acquit petitioner of both [death-eligible] murder charges and one of the felony murder charges" and that the State's evidence was "overwhelming." (Id. at 36-4 to 21).

This Court agrees with the PCR court that Petitioner has failed to make the required showing under Strickland. Specifically, Petitioner has failed to demonstrate that his counsel's performance was objectively unreasonable or shown a reasonable probability that the outcome of his trial would have been different but for his counsel's alleged error.  At trial, the court instructed the jury as to further deliberations as follows:

> Ladies and gentlemen, it is your duty as jurors to consult with one another and to deliberate with a view to reaching an agreement if you can do so without violence to individual judgment. Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors. In the course of your deliberations, do not hesitate to re-examine your own views and change your opinion if convinced it is erroneous, but do not surrender your honest conviction as to the weight or effect of evidence solely because of the opinion of your fellow jurors or for the mere purpose of returning a verdict. You are not partisans. You are judges, judges of the facts. Ladies and gentlemen, you will retire to the Jury Assembly Room for further deliberations. Thank you. [Rta21/21T5-24 to 6-17].

(Resp.'s Ex. Rta21/21T5-24 to 6-17, ECF No. 14-49 (emphasis added)).  This instruction admonished the jurors to adhere to their individual judgment and not to "surrender . . . honest conviction[s] . . . for the mere purpose of returning a verdict."  Thus, contrary to Petitioner's assertion, the instruction did not give an impression that the jury had no choice but to return a unanimous verdict.  Moreover, as the PCR

court observed, Petitioner failed to identify a "proper" instruction informing the jury that it did not have an obligation to reach a verdict or to demonstrate that defense counsel was required to request such an instruction. Petitioner therefore has not shown that counsel's representation was deficient.

Petitioner also has not established prejudice as required under Strickland. As the PCR court stated, the record does not indicate that the jury remained unable to reach a verdict during its continued deliberations. In addition, after continuing to deliberate, the jury acquitted Petitioner of the more serious death-eligible offenses. Given the nature of the trial court's charge to continue deliberation, the evidence presented at trial, the jury's ultimate verdict, and no indication that the jury's verdict was anything but the result of its deliberations and determinations of the facts, Petitioner has failed to satisfy the prejudice requirement of Strickland. He therefore is not entitled to federal habeas relief on this claim. Accordingly, Ground Four will be denied.

3. Ground Eight

In Ground Eight, Petitioner asserts that he was denied effective assistance of trial "and/or" appellate counsel because counsel failed to argue that the state's opening and closing arguments were improper. In support of this claim, Petitioner

states, "the prosecutor used sarcasm and called the defendant a ['] dumb criminal' and said defendant fire expert Mr. Decker failed to use common sense and logic in reaching his opinion, and counsel failed to argued [sic] a mistrial on prosecutor's archaistic and improper remarks."  (Pet. at 8; ECF No. 4).

Petitioner raised this issue during his PCR proceedings. The Appellate Division concluded that this claim did not present sufficient merit to warrant discussion and summarily affirmed the PCR court's denial of the claim. Amodio, No. A-4350-10T1, 2012 WL 5381769, at *6.  Therefore, the last state court to consider this claim was the PCR court, which analyzed the claim as follows:

> Petitioner asserts that it was improper to describe the two murders as "horrible," used sarcasm in summation towards the defense expert, and referred to the petitioner as a "dumb" criminal.

> Under State v. Chew, 150 New Jersey 30, 84 (1997), prosecutorial misconduct is not a ground for reversal of a criminal conviction unless the conduct was so egregious as to deprive the defendant of a fair trial.

> The Court found a mistrial was warranted because the Prosecutor's excessive remarks were plainly designed to impassion a jury. . . .

> ( Reading )
> "...to justify reversal, the Prosecutor's conduct must have been 'clearly and un-mistakenly improper and must have substantially prejudiced the defendant's fundamental right to have a . . . jury fairly evaluate the merits of his defense'" . . . .

Generally, if no objection was made to the improper
remarks, the remark will not be deemed prejudicial.
Id. at 576.

In this context, it cannot be said that the
Prosecutor's remarks were so egregious as to deprive
petitioner of a fair trial. This can -- strike that --
this case can be differentiated from State v. Chew
because the Prosecutor's remarks were not excessive
nor designed to impassion a jury.

The homicides were accurately described as "horrible",
since petitioner bludgeoned Lisa Pimentel with a
hammer to death before setting the fire that resulted
in the burning -- in burning her body and burning two-
year-old Colin to death.

These comments did not deprive petitioner of a fair
trial because he was acquitted on the purposeful and
knowing, murder counts.

Therefore, despite the comments, the jury was not
moved by the "horrible" nature of the crime.

In a similar manner, calling petitioner a "dumb"
criminal or using sarcasm toward an expert could --
could not have impacted the jury.

These comments were not excessive, "unmistakably
improper," nor designed to impassion a jury. There's
no indication that calling a criminal "dumb" is unfair
or prejudicial. Similarly, challenging an expert's
conclusions is common and widely acceptable; using
sarcasm to challenge an opinion is not improper.

Further, no objection was made to any of the
Prosecutor's remarks, nor did this Court perceive any
misconduct during the State's opening and closing
remarks.

Therefore, petitioner has failed to make a prima facie
case that any of the Prosecutor's comments were either
unfair or prejudicial.

(Respt.'s Ex. Rta25/25T27-24 to 30-6; ECF No. 14-53).  The PCR

court similarly found that Petitioner's appellate counsel was

not ineffective for raising this issue on appeal because the prosecutor's statements were not improper. (Id. at 25T39-6 to 17).

In addressing the issue of prosecutorial misconduct on habeas review, the Third Circuit has stated:

> The Supreme Court has held that federal habeas relief may be granted when the "prosecutorial misconduct may 'so infec[t] the trial with unfairness as to make the resulting conviction a denial of due process."' Greer v. Miller, 483 U.S. 756, 765, 107 S.Ct. 3102, 97 L.Ed.2d 618 (1987) (quoting Donnelly v. DeChristoforo, 416 U.S. 637, 643, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974)). The Court further opined that for due process to have been offended, "the prosecutorial misconduct must be 'of sufficient significance to result in the denial of the defendant's right to a fair trial."' Id. (citing United States v. Bagley, 473 U.S. 667, 676, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985) (quoting United States v. Agurs, 427 U.S. 97, 108, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976))). See also Ramseur v. Beyer, 983 F.2d 1215, 1239 (3d Cir. 1992) (our review of a prosecutor's conduct in a state trial in a federal habeas proceeding is limited to determining whether the prosecutor's conduct "'so infect[ed] the trial with unfairness as to make the resulting conviction a denial of due process."' (quoting Greer, 483 U.S. at 765, 107 S.Ct. 3102)). This determination will, at times, require us to draw a fine line-distinguishing between ordinary trial error on one hand, and "'that sort of egregious misconduct which amounts to a denial of constitutional due process"' on the other hand. Ramseur, 983 F.2d at 1239 (quoting United States ex rel. Perry v. Mulligan, 544 F.2d 674, 678 (3d Cir. 1976)).

Werts v. Vaughn, 228 F.3d 178, 197-98 (3d Cir. 2000).

In evaluating whether the remarks of the prosecutor rise to the level of a constitutional violation, "Supreme Court precedent requires the reviewing court to weigh the prosecutor's

conduct, the effect of the curative instructions and the
strength of the evidence." Moore v. Morton, 255 F.3d 95, 107 (3d
Cir. 2001) (citing Darden v. Wainwright, 477 U.S. 168, 182, 106
S. Ct. 2464, 2472, 91 L.Ed. 2d 144 (1986)); see also Werts, 228
F.3d at 198 (citations omitted) ("The remarks must be
sufficiently prejudicial in the context of the entire trial to
violate a petitioner's due process rights."); Ramseur, 983 F.2d
at 1239 (citing Greer, 483 U.S. at 766, 107 S.Ct. 3102).

Here, the PCR court concluded that the prosecutor's
comments were not egregious and that they did not deny
Petitioner his right to a fair trial. Accordingly, that court
concluded that Petitioner failed to establish that his trial and
appellate counsel were ineffective for failing to challenge the
statements; in other words, the PCR court concluded that
Petitioner did not satisfy Strickland's prejudice prong. This
Court agrees and finds that Petitioner's claim that his counsel
was ineffective on these points lacks merit. The Court, as it
must, considers the prosecutor's comments within the context of
the entire trial.

### a. The "horrible" nature of the crimes

Petitioner claims that his counsel should have challenged
the prosecutor's description of the crimes as "horrible." In
opening remarks, the prosecutor stated in part:

> So, ladies and gentlemen, when I speak with you again
> after all of the evidence is presented, I'm going to
> ask you to apply your common sense to this evidence
> and render a verdict consistent with the evidence and
> your common sense, and I submit to you that when you
> hear this evidence, the only conclusion you can draw
> is that he is guilty of these two horrible murders and
> all the related charges.

(Respt.'s Ex. Rta10/10T38-9 to 16; ECF No. 14-38). Given the
entire record of the trial and the evidence presented regarding
the nature of the crime, this Court agrees with the PCR court
that this comment was not egregious and did not render
Petitioner's trial unfair. Moreover, Petitioner has not
demonstrated a reasonable probability that the outcome of his
trial would have been different had his counsel challenged this
statement. In fact, as the PCR court observed, Petitioner was
acquitted of the more serious charges against him, which
suggests that the prosecutor's description of the crimes as
"horrible" did not produce an unfair result. Accordingly,
Petitioner has failed to show prejudice as required by
Strickland and he is therefore not entitled to habeas relief on
this claim.

b. Prosecutor's "sarcastic" remarks

Petitioner argues that the prosecutor's use of sarcasm when
addressing the testimony of the defense expert constituted
misconduct and that counsel should have challenged the
prosecutor's actions. In summation, the prosecutor stated:

> Do you really believe she had an asthma attack, fell
> and hit her head, and ended up next to a hammer,
> ladies and gentlemen? Of course not.
>
> Gee, Dr. Adams, when she fell, did she also splatter
> her blood and gasoline all over the defendant too?
> Geez, well, I don't know.

(Respt.'s Ex. Rta18/18T90-22 to 91-2; ECF No. 14-46).   Again,
this Court agrees with the PCR court's conclusion that these
comments were not so egregious as to infect the trial with
unfairness and deprive Petitioner of a fair trial.   A prosecutor
is entitled to considerable latitude to argue the evidence and
reasonable inferences that can be drawn from that evidence. <u>See
United States v. Werme</u>, 939 F.2d 108, 117 (3d Cir. 1991).
Petitioner has not identified – and this Court has not uncovered
– controlling authority stating that a prosecutor's use of
sarcasm in a summation is constitutionally improper.   As such,
Petitioner has not established that counsels' failure to
challenge this statement prejudiced him at trial or on appeal
because he has not shown that such a challenge would have been
successful.   As a result, Petitioner has failed to show a
reasonable probability that the outcome of the proceedings would
have been different if counsel had raised this issue.
Accordingly, Petitioner is not entitled to habeas relief on this
claim.

     c. <u>"Dumb Criminal"</u>

Petitioner also asserts that the prosecutor's reference to him as a "dumb" criminal constituted misconduct which should have been challenged by his counsel.  During summation, the prosecutor stated in part:

> We heard argument [from defense counsel] how the defendant – how stupid could he be? Well, as I said, this is not a planned murder. This is someone who's inflicted trauma and now is trying all kinds of ways to figure out what they're going to do about it. Are they going to do stupid things? Yes, of course, at least stupid in hindsight, leaving the hammer there.
>
> The defendant didn't – unlike Mr. Reilly's characterization, the defendant didn't have all night to consider how to do this. I'm not alleging that he's that evil, ladies and gentlemen. I'm not alleging that he sat there or stood there as he's washing the cars, boy, how am I going to kill her and set this house on fire and get away with it? That's not what he was doing, so that's why we can expect stupid things.
>
> He was dumb enough to burn himself while setting the fire.  Doesn't that tell you that he's dumb enough to leave a hammer next to the body?
>
> Ladies and gentlemen, you shouldn't acquit a defendant just because he's a lousy criminal. I mean, we'd have to acquit everybody.
>
> . . . .
>
> As I said, you can't find the defendant not guilty because he's a dumb criminal and he set himself on fire.

(Respt.'s Ex. Rta18/18T85-25 to 86-20; 18T105-15 to 17; ECF No. 14-46).

Viewed in context, these comments were not so egregious as to infect the trial with unfairness and violate Petitioner's

rights to due process.  The prosecutor's statements in this respect were in response to defense counsel's summation, in which counsel challenged the plausibility of the State's case by suggesting that the State wanted the jury to believe that Petitioner was "a knuckle-head who poured a quart of gas on the floor" away from the bodies and lit it with a match in close proximity to his own face.  (Rta18/18T32-10 to 16; ECF No. 14-46). See e.g., Darden, 477 U.S. at 182 (noting that the "invited response" nature of the prosecutor's comment is used to determine the effect on the trial as a whole).  Weighed against the evidence and the entirety of the proceedings, the prosecutor's comments were not constitutionally improper.  As such, Petitioner's counsel was not ineffective for failing to challenge these remarks because Petitioner cannot demonstrate a reasonable probability that if they had, the outcome of his trial would have been different.  Petitioner therefore is not entitled to federal habeas relief on this claim.  Accordingly, Ground Eight will be denied.

4. Ground Eleven (A)

In Ground Eleven (A), Petitioner asserts that he received ineffective assistance because trial counsel "opened the door to other crimes, wrong or [sic] acts evidence, and appellate counsel failed to raise this on direct appeal." (Pet. at 8; ECF

No. 4). Petitioner raised this issue in the course of his PCR

proceedings.

The last state court to discuss this claim was the

Appellate Division during Petitioner's PCR appeal. That court

analyzed the claim as follows:

> Defendant argues he was denied the effective
> assistance of trial and appellate counsel. We do not
> agree.
>
> To establish a prima facie case for ineffective
> assistance of counsel, a defendant must show a
> reasonable likelihood of success under the two-part
> test articulated by the Supreme Court in Strickland v.
> Washington, 466 U.S. 668, 686, 104 S.Ct. 2052, 2064,
> 80 L. Ed.2d 674, 692-93 (1984), and adopted by our
> Supreme Court in State v. Fritz, 105 N.J. 42, 58
> (1987). The Strickland test requires the defendant to
> show that (1) the representation by his attorney fell
> below an objective standard of reasonableness; and (2)
> but for counsel's errors, the results of the
> proceeding would have been different. Strickland,
> supra, 466 U.S. at 694, 104 S.Ct. at 2068, 80 L. Ed.2d
> at 698.
>
> "Judicial scrutiny of counsel's performance must be
> highly deferential." Id. at 689, 104 S.Ct. at 2065, 80
> L. Ed.2d at 694. Consequently, there is a "strong
> presumption that counsel's conduct falls within the
> wide range of reasonable professional assistance"
> because of the inherent difficulties associated in
> evaluating counsel's performance. Ibid. A defendant
> must, therefore, "overcome the presumption that, under
> the circumstances, the challenged action 'might be
> considered sound trial strategy.'" Id. at 689, 104
> S.Ct. at 2065, 80 L. Ed.2d at 694-95 (quoting Michel
> v. Louisiana, 350 U.S. 91, 101, 76 S.Ct. 158, 164, 100
> L. Ed. 83, 93 (1955)).
>
> Defendant claims that his attorney erroneously had him
> testify on direct examination about the October 11,
> 2000 incident that led to the issuance of the
> temporary domestic violence restraining order. He

contends that this testimony opened the door to
"devastating" cross-examination and rebuttal evidence
that Lisa's arm was bruised during the incident.

. . . .

Here, defendant moved to sever the contempt charge
from the other counts for purposes of trial. The State
did not oppose the motion. When the motion was argued,
defense counsel noted on the record that he had
discussed the Chenique-Puey decision with defendant
and had explained that, if defendant elected to
testify at trial, he could be cross-examined about the
restraining order and the facts that led to its
issuance. The court granted the motion.

At trial, defendant's counsel informed the court that
defendant intended to testify. The court noted that,
if defendant testified, the restraining order would be
admissible for impeachment purposes. Defendant then
testified about the October 11, 2000 incident, which
led to the issuance of the restraining order. The
parties thereafter agreed "to have the jury consider
the contempt charge with the other charges." Amodio,
supra, 390 N.J.Super. at 330.

The PCR court determined that defendant's trial
attorney was not deficient in having defendant testify
concerning the restraining order and the surrounding
events. The court noted that, since defendant chose to
testify, the restraining order and the related events
were admissible for impeachment purposes. The court
found that counsel made a strategic decision to have
defendant explain these matters in an effort to
minimize this evidence.

The PCR court additionally found that trial counsel's
representation of defendant was "the opposite of
substandard performance." The court noted that counsel
had convinced the jury to find defendant not guilty of
both murder charges and one felony murder charge. The
court also noted the difficult task that counsel
faced, given the strength of the evidence the State
had presented.

We are satisfied that the PCR court correctly
determined that defendant was not denied the effective

assistance of trial counsel. We are also satisfied
that appellate counsel was not deficient for failing
to raise this issue on appeal.

Amodio, No. A-4350-10T1, 2012 WL 5381769, at *4-5.

This Court agrees with the Appellate Division's conclusion
that Petitioner was not denied the effective assistance of
counsel on this issue.  Counsel's decision to have Petitioner
testify to these matters in order to get ahead of them and
attempt to explain them was a reasoned strategic decision.
Petitioner has not overcome the presumption that counsel's
strategy was sound.  As discussed above with respect to Ground
Ten, Petitioner knew that if he testified, the events
surrounding the restraining order could be used to impeach his
credibility.  Moreover, the trial court provided proper limiting
instructions as to the proper use of this evidence.  In sum,
Petitioner has not demonstrated a reasonable probability that
but for counsel's alleged error, the outcome of his trial would
have been different.  Accordingly, Petitioner is not entitled to
habeas relief on this claim.  Ground Eleven (A) will therefore
be denied.

        5. Grounds Eleven (B) and Twelve

In Grounds Eleven (B) and Twelve, Petitioner asserts that
his appellate counsel was ineffective for failing to raise the
issue of jury intrusion and interference.  In support of this
claim, Petitioner states, "While the jury was waiting to be

brought in a gentleman walked past juror nine, Hit her Badge and
said 'GUILTY' all the jurors were present, three of them felt
threatened." (Pet. at 8-9; ECF No. 4).

Petitioner raised this issue during his PCR proceedings.
The last state court to address this claim was the Appellate
Division, which analyzed the claim as follows:

> Defendant also argues that his appellate counsel erred
> by failing to raise an issue of "jury intrusion by
> outside influence" in his appeal. Again, we disagree.
>
> The record indicates before the trial continued on the
> morning of April 2, 2004, the judge asked the jurors
> if they had been exposed to media coverage or
> approached by anyone regarding the case. After one
> juror indicated she had been approached regarding the
> case, the judge questioned all of the jurors, in the
> presence of counsel.
>
> Juror number nine stated that while she was waiting to
> enter the courtroom that morning, "a gentleman walked
> past, hit my badge, and said, 'Guilty.'" After further
> questioning, the judge asked the juror if she felt
> "threatened in any way[,]" and the juror responded in
> the negative. The juror also stated that the incident
> would not interfere with her ability to be fair and
> impartial.
>
> The judge [sic] court questioned the other jurors, who
> all testified that they could be fair and impartial.
> Defendant moved for a mistrial. The judge denied the
> motion, finding that the jury had not been tainted and
> could continue with the case.
>
> Where, as here, there is a claim of jury intrusion by
> irregular influences, the trial judge must determine
> if the jury has been tainted by questioning the jurors
> in the presence of counsel. State v. R.D., 169 N.J.
> 551, 558 (2001). The decision to grant a mistrial
> rests in the sound discretion of the trial court. Id.
> The trial court's decision will not be reversed unless
> shown to be an abuse of discretion. Id. at 560.

> The PCR court correctly found that there was no
> evidence that the trial judge abused his discretion by
> denying defendant's motion for a mistrial. The judge
> had questioned the jurors in the manner required by
> <u>R.D.</u> If appellate counsel had raised the issue in the
> appeal, the result of that proceeding would have been
> the same. We are therefore convinced that the PCR
> court correctly determined that defendant was not
> denied the effective assistance of appellate counsel.

<u>Amodio</u>, No. A-4350-10T1, 2012 WL 5381769, at *5-6.

The Appellate Division concluded that Petitioner was not prejudiced by appellate counsel's failure to raise this issue during Petitioner's direct appeal because the result of that proceeding would have been the same. This Court agrees. The trial court questioned the jurors after the incident in question and concluded that the jury had not been tainted. Denying Petitioner's motion for a mistrial therefore did not, in and of itself, constitute a denial of due process. <u>See</u> <u>Smith v. Phillips</u>, 455 U.S. 209, 217 (1982) ("due process does not require a new trial every time a juror has been placed in a potentially compromising situation . . . it is virtually impossible to shield jurors from every contact or influence that might theoretically affect their vote").

Given the trial court's investigation into this incident, as well as the Appellate Division's analysis of the claim, Petitioner has not shown that had appellate counsel raised the issue of intrusion, such a challenge would have been successful

and would have altered the outcome of his appeal.  Accordingly,
Petitioner has not demonstrated the prejudice required by
Strickland and is not entitled to federal habeas relief on these
claims.  Therefore, Grounds Eleven (B) and Twelve will be
denied.

IV.   CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice
or judge issues a certificate of appealability, an appeal may
not be taken from a final order in a proceeding under 28 U.S.C.
§ 2254.  A certificate of appealability may issue "only if the
applicant has made a substantial showing of the denial of a
constitutional right." 28 U.S.C. § 2253(c)(2).  "A petitioner
satisfies this standard by demonstrating that jurists of reason
could disagree with the district court's resolution of his
constitutional claims or that jurists could conclude the issues
presented are adequate to deserve encouragement to proceed
further." Miller-El v. Cockrell, 537 U.S. 322, 327, 123 S. Ct.
1029, 154 L.Ed.2d 931 (2003) (citation omitted), cited in Eley
v. Erickson, 712 F.3d 837, 845 (3d Cir. 2013).

Here, jurists of reason would not disagree with this
Court's resolution of Petitioner's claims.  No certificate of
appealability will issue.

V.   <u>CONCLUSION</u>

For the reasons set forth above, the Petition for a Writ of Habeas Corpus under Title 28 U.S.C. § 2254 will be denied.  An appropriate Order follows.


                                        s/ Noel L. Hillman
                                       NOEL L. HILLMAN
                                       United States District Judge
Dated: December 4, 2017

At Camden, New Jersey